

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONGKUK INTERNATIONAL, INC. and THE * <br> CHUBB GROUP OF INSURANCE * <br> COMPANIES * <br> * | CIVIL ACTION <br><br> NO. 00-272 | |
| versus * <br> * | SECTION " R " ( 3 ) | |
| COASTAL CARGO COMPANY, INC. and * <br> MIDWEST MARINE MANAGEMENT * <br> COMPANY * <br> * * * * * * * * * * * * * * * * * * | Judge <br><br> Magistrate | SARAH S. VANCE <br><br> Lance M. Africk |

## MOTION IN LIMINE

COASTAL CARGO COMPANY, INC. appearing through counsel, before trial, moves the

Court to instruct plaintiffs and their counsel to refrain from soliciting and/or offering any testimony

from the witnesses C. Mark Ledet and David G. Marsh in the form of opinion or inference as to the

propriety of the actions of the stevedores in the loading, stowing and/or securing cargo aboard the

barge K-408 in the Port of New Orleans in September and October, 1998, for reasons in the

accompanying memorandum.

Respectfully submitted,

*[signature: C L Hh]*

---
Charles Hooker # 8417
Suite 1600
1555 Poydras Street
New Orleans, Louisiana 70112
Telephone:    (504) 587-1100
Facsimile:    (504) 587-1107

Counsel for COASTAL CARGO COMPANY, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DONGKUK INTERNATIONAL, INC. and THE * <br> CHUBB GROUP OF INSURANCE * <br> COMPANIES * <br> * <br> versus * <br> * <br> COASTAL CARGO COMPANY, INC. and * <br> MIDWEST MARINE MANAGEMENT * <br> COMPANY * <br> * * * * * * * * * * * * * * * * * * * | CIVIL ACTION <br><br> NO.         00-272 <br><br> SECTION     " R " ( 3 ) <br><br> Judge        SARAH S. VANCE <br><br> Magistrate   Lance M. Africk |

### MEMORANDUM IN SUPPORT OF
### MOTION IN LIMINE

May it please the Court:

### INTRODUCTION

This case involves alleged damage to cold rolled steel coils shipped from Korea to Memphis by way of New Orleans. Cold rolled steel is a finished product ready to be shaped into durable goods such as refrigerators, washing machines, *etc.* without undergoing further refining. As such it is susceptible to damage by water, among other things. Plaintiffs allege the coils in barge K-408

Page 1 of 5 Pages

were contaminated when they became wet for which Coastal as loading stevedore in New Orleans was responsible. At a conference before the magistrate on 28 June 2001 plaintiffs' counsel stated they intend to offer essentially expert testimony that stevedores improperly secured the coils for the transit up river to Memphis. The witnesses so prepared are C. Mark Ledet and David G. Marsh. Coastal Cargo Company, Inc. suggests any such testimony is improper and inadmissible.

## PLEADINGS

Following the practice in the Southern District of Texas plaintiffs filed their designation of expert witnesses by pleading whose certificate of service is dated 20th November 2000 listing the following:

DAVID G. MARSH, a Houston-based marine surveyor;

BENNIE GREINER, a Nashville, Tennessee-based marine surveyor; and

SHANKAR PANDAY, a Kenner, Louisiana-based marine surveyor.

On its witness list whose certificate of service is dated 21st December 2000, C. Mark Ledet, number 8, is identified as "Fact Witness."

By amended witness list whose certificate of service is dated 31st May 2001, plaintiffs re-designated Mr. Panday and Ms. Greiner as fact witnesses. Thus, Mark Ledet is not one of plaintiffs' expert witnesses.

Although Mr. Ledet was designated as an expert by co-defendant Midwest Marine Management Company, owner of the K-408, plaintiffs' counsel advised the magistrate settlement has been reached with that party and Midwest will not appear at trial.

Even if Mr. Ledet's survey report dated 11 March 1999 or his letter to his principal dated 17

January 2000 are considered, neither makes any mention of the stevedore's alleged actions or omissions in loading the K-408.

## DEPOSITION TESTIMONY

Furthermore, Mr. Ledet acknowledged in his 22 May 2001 deposition (attached exhibit "A") at page 11, line 18 he has never been employed as a stevedore, at page 13, line 14 he has never had the responsibility for approving the loading or stowing of steel coils in barges and at page 13, line 23 he has never testified as an expert and certainly not as an expert with knowledge of the stevedoring practices, procedures and customs existing in the Port of New Orleans.

In his 6 June 2001 deposition (attached exhibit "B") at page 18, line 25 Mr. Marsh acknowledged his only responsibility in conjunction with the loading of steel coils into barges has been from a surveying point of view in checking on the coils, at page 19, line 7 a few times in Houston, line 15 as a surveyor. At page 19, line 24 he admitted he has never had the responsibility to approve or comment on the stowing of [steel] coils in a barge. Additionally and equally important, at page 32, line 16 in response to the question whether he could say it was more likely than not that any actions of loading stevedores caused the damage to the coils, admitted he was unaware of their actions that day. And at page 33, line 5 he said he does not know whether the securing of the coils was proper and at line 12 admitted he can not say it is more likely than not that any omissions of loading stevedores caused the damage to the coils.

## LAW

***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 505 U.S. 579 (1993) charged the trial courts

to act as gatekeepers to exclude unreliable expert testimony. Under ***Kumko Tire Company v. Carmichael***, 526 U.S. 137 (1999) the gatekeeper function applies to all expert testimony not only that based in science.

Testimony by experts is the subject of Rule 702, Federal Rules of Evidence. The 2000 Notes of the Advisory Committee are instructive and the tenth paragraph is particularly enlightening.

> As stated earlier, the amendment does not distinguish between scientific and other forms of expert testimony.
>
> - - -
>
> An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as on opinion from an expert who purports to be a scientist. *See **Watkins v. Telsmith, Inc**.* [no. 96-60084 (9/16/97)] 121 F. $3^d$ 984, 991, (5th Cir. 1997)
>
> - - -
>
> The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field and the expert must explain how the conclusion is so grounded.

## CONCLUSION

Coastal Cargo Company, Inc. suggests it is clear Mark Ledet was not properly identified as an expert witness nor has he submitted the required expert report. Coastal further suggests neither Mr. Ledet nor Mr. Marsh possess the any expertise with regard to stevedoring practices, procedures or customs existing in New Orleans in 1998 such that any testimony from either in regard to the propriety of stevedore's action in loading, stowing or securing the steel coils in barge K-408 would be improper and inadmissible.

Respectfully submitted,

_____
Charles Hooker # 8417
Suite 1600
1555 Poydras Street
New Orleans, Louisiana 70112
Telephone:  (504) 587-1100
Facsimile:  (504) 587-1107

Counsel for COASTAL CARGO COMPANY, INC.

Page 5 of 5 Pages

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

---

| | |
|---|---|
| DONGKUK INTERNATIONAL, INC., and THE CHUBB GROUP OF INSURANCE COMPANIES,<br><br>        Plaintiff,<br><br>vs.<br><br>COASTAL CARGO COMPANY, INC., and MIDWEST MARINE MANAGEMENT COMPANY,<br><br>        Defendants. | Civil Action<br>NO.  00.272<br><br>Section "R" (2)<br><br>Judge:<br>SARAH S. VANCE<br><br>Magistrate:<br>Lance M. Africk |

---

May 22, 2001

DEPOSITION

OF

C. MARK LEDET

SALLY A. WORKMAN
Court Reporter
1268 Jefferson Street
Memphis, Tennessee 38104
(901) 272-3142

1   Q        Otherwise the training has been -- with Merrill
2   has been on-the-job training?
3   A        Correct.
4   Q        Does that mean that more experienced surveyors
5   took you out and showed you what was to be done?
6   A        At times, but the majority of the time was relying
7   on my experience gained at Avondale Shipyards with marine
8   construction, things of that nature, and cargo.
9   Q        Have you ever held Coast Guard licenses?
10  A        Don't have any, never have.
11  Q        Have you ever participated in the loading or
12  discharging of barges?
13  A        Quite often.
14  Q        In what capacity?
15  A        As a marine surveyor.
16  Q        Have you ever participated in the loading or
17  discharging of barges as a stevedore?
18  A        No, sir, never been employed as a stevedore.
19  Q        Have you ever had responsibility to inspect or
20  approve the loading or stowing of break bulk cargo in
21  barges?
22  A        Yes.
23  Q        In what capacity did you have that responsibility?
24  A        Well, again, as a marine surveyor, but we were
25  representing National Cargo Bureau as marine surveyor.

1  pallets of vegetable oils.
2  Q        Of who?
3  A        Vegetables oils.
4  Q        In containers of some kind?
5  A        In small containers, one-liter containers, but
6  they were all put onto a pallet and stowed in pallet
7  form.
8  Q        Was the palletized cargo all veg oil?
9  A        I would think, yes.
10 Q        And the other cargo was just break bulk?
11 A        Just break bulk.
12 Q        Have you ever had the responsibility for approving
13 the loading or stowing of steel coils in a barge?
14 A        No, sir.
15 Q        Have you ever witnessed steel coils loaded in
16 barges?
17 A        I have witnessed the loading of them, but not as a
18 representative of anyone.  Just in my general knowledge I
19 would be downtown New Orleans, be curious, and I'd go
20 down to see how things are done on that end.
21 Q        Have you ever testified, Mr. Ledet, as a witness
22 in conjunction with a trial or a deposition?
23 A        This would be my first.
24 Q        No prior depositions?
25 A        I've got a few pending, but no.

| | | |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT |  |
| 2 | EASTERN DISTRICT OF LOUISIANA | |
| 3 | | |
| 4 | DONGKUK INTERNATIONAL, INC., and | CIVIL ACTION |
| 5 | THE CHUBB GROUP OF INSURANCE | NO. 00-272 |
| 6 | COMPANIES | SECTION "R" (2) |
| 7 | versus | JUDGE VANCE |
| 8 | COASTAL CARGO COMPANY, INC., and | MAG. AFRICK |
| 9 | MIDWEST MARINE MANAGEMENT COMPANY | |

COPY

17    Deposition of CAPTAIN DAVID G. MARSH taken
18  in the above-entitled cause before Yvonne B. Griffith,
19  a Certified Court Reporter, authorized to administer
20  oaths of witnesses, pursuant to Section 961.1 of Title
21  13 of the Louisiana Revised Statutes of 1950, as
22  amended, pursuant to the following stipulation, given
23  at the offices of McALPINE & COZAD, 701 South Peters
24  Street, Suite 300, New Orleans, Louisiana 70130, on
25  Wednesday, the 6th day of June, 2001.

```
 1    nothing else but tugboat handling.  I was presented as
 2    an expert in general.  In this case it involved a ship
 3    and a tug and barge.  But I did give testimony in that
 4    case.
 5         Q.    Where was that?
 6         A.    That was in Beaumont.
 7         Q.    I assume your experience on the U. S. western
 8    rivers is somewhat limited?
 9         A.    Somewhat limited, yes, yes.
10         Q.    And I assume you've not commanded a western
11    rivers towboat push --
12         A.    That's correct.
13         Q.    -- pushing barges.
14         A.    That's correct.
15         Q.    Have you ever been on a Mississippi River
16    towboat pushing barges?
17         A.    Not while it's under way, no.
18         Q.    Have you yourself ever been involved in the
19    loading of steel coils into a river barge?
20         A.    When you are saying involved in the loading,
21    with some responsibility for the loading?
22         Q.    In a general sense, have you ever had any
23    responsibility in conjunction with the loading of steel
24    coils into a river barge?
25         A.    Only from a surveying point of view in checking
```

1  on the coils.
2  Q.    How often has that occurred?  How often have
3  you had that responsibility?
4  A.    We've done it a few times.  Obviously the barge
5  traffic in Houston is nothing like it is in New
6  Orleans.  I can't recall how many.  I've certainly seen
7  -- seen it happen a few times loading and discharging
8  barges.
9  Q.    Have you ever surveyed the loading of steel
10 coils into a barge from direct over-the-side discharge
11 from a ship?
12 A.    Yes.  That's how I've seen it in Houston, yes.
13 Q.    And your responsibilities there were
14 essentially as a marine surveyor?
15 A.    Yes.
16 Q.    And what, as marine surveyor, do you do or did
17 you do in those circumstances?
18 A.    Well, I was -- I was there to survey the
19 condition of the coils as they were being loaded into
20 the barge.
21 Q.    Did your responsibilities include approving or
22 commenting upon the loading and/or stowing of the coils
23 themselves in the barge?
24 A.    Not in the barge, no, no.
25 Q.    Have you ever performed similar activities,

1  conditions.
2  Q.   Heavy weather could reduce the opportunity for
3  ventilation, could it not?
4  A.   Oh, yes.
5  Q.   So is it fair to say your basic opinion here is
6  that water ingress occurred sometime while those coils
7  were in the barge K-408?
8  A.   After the coils were in the barge before they
9  got to Memphis, yes.
10 Q.   But if I understood your previous answers, you
11 cannot venture an opinion as to when that time was.
12 A.   No.
13 Q.   Can you say it's more likely than not that any
14 actions of the loading stevedores in New Orleans caused
15 the damage to these coils?
16 A.   I'm not aware of their actions that day.  The
17 coils were found to be wetted, and the barge was found
18 to be listing.  And who really knows the sequence of
19 events?
20 Q.   Can you say it's more likely than not that any
21 omissions of the loading stevedores in New Orleans
22 caused the damage to these coils?
23 A.   The only -- these coils -- some of them moved
24 in the barge or were found to have moved.  Whether that
25 means that they weren't properly secured during the

```
 1  discharge from the vessel to the barge while they were
 2  being loaded on the barge, I don't know.
 3       Q.   The last was what, sir?
 4       A.   I don't know if they -- if it has anything to
 5  do with securing them on the barge, whether that was
 6  correctly carried out or not.  I don't have any
 7  information on that.
 8       Q.   So the answer to the question then is no, you
 9  cannot say it's more likely than not that any omissions
10  of the loading stevedores in New Orleans caused the
11  damage to these coils.
12       A.   I can't say whether it's more likely or not,
13  that's correct.
14            MR. HOOKER:
15                 I believe those are all the questions I
16  have for now.  Thank you very much.
17            MR. COX:
18                 Would y'all mind if we took a little
19  break?
20            (Following a brief recess, the proceedings
21  were continued.)
22  EXAMINATION BY MR. PAYSSE:
23       Q.   Captain, my name is Rene Paysse, and I
24  represent Midwest Marine Management, the operator of
25  the barge K-408.  I will be fairly brief.
```

## CERTIFICATE OF SERVICE

I certify this Motion for Leave to File Motion in Limine Out of Time, Supporting Memorandum, [Proposed] Order, Motion in Limine and Supporting Memorandum have been served on all counsel of record by facsimile transmission on July 4, 2001.

_____
Charles Hooker